## No. 10,040.

### BOARD OF HARBOR MASTERS OF NEW ORLEANS VS. MORGAN'S LOUISIANA AND TEXAS RAILROAD AND STEAMSHIP COMPANY.

The legislation relative to harbor masters has no application to vessels entering the port of New Orleans, loading, unloading or making fast to private wharves on the right bank of the river, placed by law under the exclusive management and control of the owners thereof.

The duties imposed and rights conferred upon the harbor masters are not susceptible of being performed or exercised at the wharves of the company, to whom the exclusive management and control of the same has been entrusted by legitimate authority.

The failure to have ever set up claims for services and to have proved that such were rendered, tell significantly in favor of the company.

APPEAL from the Civil District Court for the Parish of Orleans.; *Tissot*, J.

*J. R. Beckwith* for Plaintiff and Appellee :

#### I.

All of the provisions of sections eight and nine of article one of the federal constitution are intended to confer powers and impose restraints upon congress and the general government, and do not impose any restrictions or restraints upon the several States. Restraint upon States is contained in the tenth section of Article one. This was expressly determined in Morgan vs. Louisiana, 118 U. S. 455-467, affirming Passenger Cases, 8 How. 283-541 ; Brig Wilson vs. United States, 1 Brock. 423-432; Butler vs. Hopper, 1 Wash. C. C. 499 ; Pennsylvania vs. Wheeling Bridge Company. 18 How. 421, 435; Munn vs. Illinois, 94 U. S. 113, 135.

#### II.

There are State regulations for improvement of river and harbor facilities, and regulations adopted in the exercise of the supreme police authority of the States within their boundaries, and dues or taxes imposed to carry such purposes into effect that have the effect to regulate commerce, that are valid until displaced or contravened by some legislation of Congress.

Morgan vs. Louisiana. 118 U. S., approving Wilson vs. Blackbird Marsh Co., 2 Pet. 245 ; Cooley vs. Board of Wardens, 12 How. 299 ; Gilman vs. Philadelphia, 3 Wall. 713, 727 ; Pound vs. Turk, 95 U. S. 459, 462; Hall vs DeCuir, 95 U. S 485-488 ; Packet Co. vs. Catlettsburg, 105 U. S. 559, 562 ; Transportation Co. vs. Parkersburg, 107 U. S. 691, 702 ; Escanaba Co. vs. Chicago, 107 U. S. 678 ; and Huse vs. Glover, 119 U. S. 543.

#### III.

The power of States to regulate vessels in its own harbors, and police its own ports, and appoint harbor masters for that purpose, and impose dues on vessels to carry out such regulations, is a power residing in the States, lawfully exercised unless contravened or prohibited by some general law of Congress. Gloucester Ferry Company vs. Pennsylvania, 114 U. S. 196, 214.

#### IV.

It is no defense to a demand for harbor master's dues or against a penalty for resisting the lawful order of a harbor master to move a vessel from its mooring at the wharf, that the defendant owns or controls the wharf as his own private property. Vanderbilt vs. Adams, 7 Cowen 349, approved in Gloucester Ferry Company vs. Pennsylvania, 114 U. S. 196, 215.

### *Leovy & Blair* for Defendant and Appellant :

The testimony shows that defendant's wharves are on the west bank of the river, remote from the actual port, are private wharves used by defendant and necessarily, from their peculiar structure and business, used by it exclusively. That its right to own and control its wharves is derived from the Statutes of 1853 and 1877, being the charters of defendant, and also by virtue of its riparian rights resulting from ownership of the land, long before the annexation of Algiers to New Orleans. It is also proved, and apparently not contradicted, that the harbor masters have never performed any service for defendant or offered to perform any, and that the officers of the company have never seen any of the harbor masters at or near its wharves ; and it is also shown that no public wharves exist on the west side of the river ; and that the actual work and jurisdiction of the harbor masters have never been extended to the west side of the river. Under these circumstances, we contend that the act of 1877 (Extra Session, p. 104) and other Statutes relied on by plaintiffs, are null and void, because they conflict with the following provisions of the U. S. Constitution :

1.  Art. First, Section 10, § 3 : No State shall, without the consent of Congress, levy any duty on tonnage.
2.  Article First, Section 8 § 3 : Congress shall have power   *   *   " to regulate commerce with foreign nations, and among the several States and with the Indian tribes." 27 Ann. 414 ; 31 Ann. 65 ; 6 Wall. 31 ; 19 Wall. 581 ; 20 Wall. 580 ; 94 U. S. S. C. 238, 248 ; 95 U. S. S. C. 89, 580 ; 100 U. S. S. C. 423, 430 , 114 U. S. 196.
3.  The power to regulate commerce is exclusively vested in Congress. 9 Wheaton 186 ; 12 Wheaton 414 ; 12 Peters 72 ; 6 Wall. 31 ; 94 U. S. S. C. 246 ; 100 U. S. S. C. 434.
4.  Because they violate Article 1, Sec. 9, § 6, which declares that no preference shall be given by any regulation of commerce or revenue to the ports of one State over those of another ; nor shall vessels bound to or from one State be obliged to enter, clear or pay duties in another. Even Congress is prohibited from enacting such statutes. 94 U. S. S. C. p. 243 ; 100 U. S. S. C. p. 434 ; 107 U. S. 702.
5.  The power granted by special statutes to defendant was for a public purpose, to-wit : a railroad purpose. 27 Ann. 414 ; 11 Ann. 161 ; 3 Wall. 364 ; 5 Wall. 772 ; 15 Wall. 667 ; 19 Wall. 661 ; Ellerman vs. N. O. and Chatt. R. R., 105 U. S. 166 ; Mills on Eminent Domain, Sec. 46.
6.  The Statutes, so far as it is attempted to apply them to defendant in this case, are null and void, because they impair they obligation of the contract by which, for and in consideration of constructing the road, the State granted wharf franchises, of which it is sought to deprive defendant.
7.  Defendant, as riparian owner, even without special grants, possessed the right to build wharves for its own use in front of its property. 31 Ann. p. 65 ; 6 Ann. 450 ; 5 Ann. 36 ; 20 Ann. 308 ; C. C. 455, 457, 452, 863 ; New Orleans vs. Ellerman, United States Supreme Court, March, 1882 ; 1 Black 23 ; 7 Wall. 272 ; 10 Wall. 502 ; 21 Wall. 389 ; 1 Eng. Law Reports, Appeal Cases, 662.
8.  And this is a right of which riparian proprietors cannot be divested, except by legal proceedings, and for adequate compensation, nor without existence of necessity for public use. 5 Central Law Journal 267 ; 1 Black. 23 ; 105 U. S. 166 ; 10 Wall 502 ; 18 La. 122 ; 20 Ann. 308 ; 27 Ann. 414 ; C. C. 863.
9.  The power to construct, maintain and control its own wharves, was granted to defendant and its vendors by several acts of the Louisiana Legislature, and among others, by the following : Acts 1853, p. 119 ; 1853, p. 328 ; 1855, p. 212 ; 1858, p. 196 ; 1877, p. 37.
10.  Harbor master fees cannot be collected where no special service is performed. 94 U. S. 243.
11.  Railroad wharf rights are necessarily exclusive. 105 U. S. 166.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an action for harbor master's fees, specified in an itemized bill.

The claim is based upon the act of 1856, incorporated in the Revised Statutes, under Nos. 1679 to 1690, and it rests also on act No. 64 of 1877, and on rules and regulations adopted by the board of harbormasters.

The defense is: exemption from such fees, under the legislative charter granted the defendant and under chartered privileges acquired by it, by purchase, from the assignee of a previous corporation.

It is further urged that the statutes relied on impair the obligations of the contracts, contained in the charters, and thus violate both the Federal and State Constitutions.

It is also claimed that the statutes levy a duty on tonnage, regulate commerce and give a preference to the ports of our State over those of another and thus contravene the Constitution of the United States and are null and inoperative.

Finally, it is claimed that the fees could be demanded only when services have been actually rendered.

From an adverse judgment the company appeals.

It is needless to pass upon all these defences.

An examination of the laws upon which the plaintiffs rely, which were passed at a time when the port of New Orleans did not practically extend to the right bank of the river, satisfactorily establishes that they were not originally intended to apply to vessels entering those waters and landing at private wharves on that side of the stream and under the exclusive control of the owners thereof.

The wharves of the defendant are situated on the right bank of the river, where there exists no public wharf. They have never been used by any other vessels. They have been so constructed and are covered with rails, and accessible in such a manner, as to afford convenience to none other but the vessels of the company. No vessel ever claimed the right of making fast to them. They have ever been used exclusively by the company.

Under the charter granted the company by the Legislature in 1877 (No. 64), and also under privileges long previously accorded to the New Orleans, Opelousas and Great Western Railroad Company, and which were transferred to Charles Morgan, who subsequently conveyed them to the company, the exclusive management and control of the wharves, etc., was conferred on the defendant, to be exercised as it

may deem most expedient and for its welfare, subject only to the police powers of municipal corporations.    (Sec. 3.)

Pretermitting the question whether those privileges and immunities could or not be recalled, it is apparent that Act No. 64 of 1877, determining the fees of the harbor-masters, does not purport to suppress or abridge them in any manner.

Reference to the laws concerning harbor-masters shows that the duties which they may fulfil relate to the assigning of position to vessels at the wharves, in certain cases, and are of such a nature or character that the vessels of the company are not, under the law, subjected to the supervision of those officials, as they cannot be placed under different concurrent and possibly conflicting authorities.

It is besides proved that no services were rendered to the defendant, and that since the creation of the body of harbor-masters, the present is the first attempt to collect from it fees, as due to the latter.

The omission to have claimed such fees is indicative of the construction placed upon the laws on the subject, as well by the plaintiffs as by their predecessors, and tells adversely to them.

It is therefore ordered and decreed that the judgment appealed from be reversed, and that there now be judgment for defendant, with costs